**Janet Marie MUEHE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A04–9407–CR–263.**

Court of Appeals of Indiana,
Fourth District.

Feb. 17, 1995.

Transfer Denied May 11, 1995.

---

R. Brent Zook, Goshen, IN, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, IN, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, Janet Muehe ("Janet"), appeals from her conviction of Neglect of a Dependent, a class D felony. We affirm.

### Issues

Janet presents three issues for our review, which we consolidate and restate as follows: Whether there was sufficient evidence to find Muehe guilty of Neglect of a Dependent.

### Facts and Procedural History

The facts most favorable to the judgment indicate Janet was aware or should have been aware that her husband, Richard Muehe ("Richard"), molested and had sexual intercourse with their 14 year-old daughter, N.M. Richard had been previously convicted of fondling N.M. Moreover, Richard gave a written statement to police that he had sexual relations with his daughter and that he informed Janet of such. Richard continued to have sexual relations with his daughter after Janet was made aware of the situation. Janet gave a signed statement to police in which she stated the following:

> Weeks ago, I'm not for sure, my husband and I discussed he and [N.M.] having sex. I remember we talked in little bits and pieces. He probably came out and told me, but I don't remember for sure. . . .

Janet argues that Richard's written statement was improperly admitted into evidence and may not be considered as substantive evidence, that the state failed to prove a corpus delicti sufficient to justify admission of her written statement to police into evidence against her, and that there was not adequate evidence to show her guilt beyond a reasonable doubt.

### Discussion and Decision

It is not necessary for us to determine whether Richard's written statement was properly admitted into evidence for purposes of use as substantive evidence. Janet argues the statement was improperly admitted for purposes of consideration as substantive evidence. To the contrary, the transcript of Richard's testimony indicates that his prior written statement was admitted solely for the purpose of impeachment when Richard contradicted under oath his prior written statement to the police.

Indiana Code § 34–1–14–15 governs the impeachment of a party's own witness:

> The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, then the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he had made statements different from his present testimony.

As a witness for the prosecution, Richard was fully expected to comply with the written statement given by him to the police. When he contradicted his prior statement, the prosecution had no alternative but to impeach Richard with that prior statement. Richard's written statement was not therefore needed to prove the substantive fact that Janet had knowledge because Richard testified under oath to such during his impeachment by the prosecution.

■ We must next determine whether the state proved a corpus delicti sufficient to justify admission into evidence of Janet's written statement to the police. Each element of the crime need not be proved beyond a reasonable doubt to establish the corpus delicti; independent evidence from which an inference may be drawn that a crime was committed is sufficient. Regan v. State (1992), Ind.App., 590 N.E.2d 640, 644. There

must be "some evidence of probative value aside from the confession" that tends to prove the commission of the crime. *Parker v. State* (1949), 228 Ind. 1, 88 N.E.2d 556, 558.

■ Janet was convicted of Neglect of a Dependent, I.C. § 35–46–1–4(a)(1): "A person having the care of a dependent ... who knowingly or intentionally: (1) places the dependent in a situation that may endanger his life or health ... commits neglect of a dependent, a class D felony." Janet argues first that she did not *knowingly or intentionally place* N.M. in a situation that would endanger her life or health, that it was Richard who did so. However, a person knowingly commits neglect of a child when she is subjectively aware of a high probability that she placed the child in a dangerous situation. *Hill v. State* (1989), Ind.App., 535 N.E.2d 153.

■ This is not a situation where Richard's abuse of N.M. was a startling surprise. Janet gave a written statement to the police that she and Richard had discussed "he and N.M. having sex." Additionally and independent of Janet's and Richard's statements to police, the following facts were available to the court to reach its decision: (1) Janet was aware that Richard had been previously convicted of fondling their daughter; (2) Richard testified at the trial, independent of his written statement, that he discussed his sexual feelings for N.M. with Janet; (3) Janet was aware that the family was no longer involved in professional counseling; (4) the family of four lived in a very small house and thus the proximity of the events to Janet should have placed her on notice of Richard's behavior, and; (5) the record is replete with suggestions that N.M. had developed behavioral problems to the point of running away from home.

■ It is not necessary for the State to have proved Janet's actual knowledge of Richard's abuse of N.M. in order to meet the *corpus delicti* requirement. Rather, we may infer from the circumstances Janet's knowledge. Moreover, the nature of the peril to which N.M. had been exposed was such that Janet should have been aware of Richard's

conduct. Given these facts alone, Janet had an obligation as N.M.'s parent, to remove N.M. from the situation and to prevent Richard from spending time alone with N.M. Her failure to do so placed N.M. in a situation that would endanger her life or health.

Janet argues that because Richard was her husband and part-custodial parent of N.M., she had no right to prevent his access to N.M. or to place restrictions upon their relationship. However, Janet was aware that there was a high probability that she placed N.M. in a dangerous situation. The situation in their household would be no different than if Richard were physically beating N.M. Under such circumstance, Janet would have a clear duty to remove N.M. from the situation in order to avoid injury, or at the very least, to report her suspicions to the proper authorities.

In a worse case scenario for Janet, she would have had to defend herself against Richard for refusing to allow him access to N.M. Should her allegations of child molest have been found to be untrue, Richard's access to N.M. would have been restored. The concept that Janet was powerless to prevent Richard's continuing abuse of N.M. would create an absolute defense to this crime in a situation where a child is abused by one parent and the other parent fails to act in prevention of the abuse. Even had the family not been intact and Richard had court-approved visitation with N.M., Janet, as the responsible parent, would have had a duty to report the suspected activity to authorities and to do whatever was in her power to prevent Richard from continuing the abuse. In such a situation, it would certainly be within Janet's power to legally challenge the court-approved visitation. The nature of the acts by Richard could, for example, have been grounds for an emergency injunction against visitation, and even a restraining order keeping him from the child until such facts had been resolved properly and to the satisfaction of proper authorities.

■■ A parent's failure to take appropriate steps to protect his or her child from the abuse of the other parent is tantamount to neglect of that child, not to mention moral complicity with the base crime being perpe-

trated upon the child by the other parent. In a situation where it is the other parent perpetuating the abuse upon the child, the nonabusing parent is under an even greater duty to takes steps necessary to prevent the abuse. First, the parent has a higher probability of knowing about the abuse because she lives with both the victim and the abuser. Second, the relationship of the child-victim to the parent-abuser presents additional problems that do not arise when the abuser is a stranger. Due to the added problems inherent in a parent-child abuse situation, the nonabusing parent, as the only advocate for the child, has a greater responsibility to prevent such abuse when it becomes or should have become evident to that parent.

█ Finally, we must determine whether there was sufficient evidence to support Janet's conviction. In reviewing a challenge to the sufficiency of the evidence, we will neither reweigh the evidence nor judge the witnesses' credibility. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242. Janet argues that she had no power to keep Richard "out." To the contrary, Janet had many alternatives: counseling, separation, divorce, and/or contacting the proper authorities to name a few. Nonetheless, Richard's culpability stands independent of Janet's. As previously mentioned, Janet had a statutory and parental duty to protect N.M. from the sexual advances of Richard. We will not reweigh the evidence regarding her failure to carry out that duty.

Affirmed.

DARDEN, J., concurring.

RILEY, J., dissenting with opinion.

RILEY, Judge.

I respectfully dissent. Ind.Evidence Rule 801(d)(1)(A) provides for admissibility, as substantive evidence, of a prior statement that (a) is inconsistent with the declarant's testimony and (b) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.[1] Richard Muehe's "prior statement"

was inconsistent with his in-court testimony. However, inconsistency alone is not sufficient to render a prior statement admissible as substantive evidence. Miller, 13 *Indiana Evidence* § 801.400A (1994 Supplement). The statement also must have been made under oath "at a trial, hearing, or other proceeding, or in a deposition." Evid.R. 801(d)(1)(A).

The prior statement given to the Elkhart Police by Richard Muehe was not given under oath or under the penalties of perjury. The statement was given orally by Richard Muehe and then was typewritten by the Elkhart Police Department on a form provided by them. The statement began and ended as follows:

> My name is Richard Muehe and I am at the Elkhart Police Department talking to Det. Posthuma and Lt. Converse. Det. Posthuma has read me my Civil Rights and I have waived these rights and agreed to make this Statement. I am telling the Detective about what has been going on with my daughter (N.M.) . . .

> This is a true and correct statement to the best of my knowledge and ability.

This statement was not made under oath nor was it made at a trial, hearing, or other proceeding. It is simply inadmissible hearsay under the rules of evidence and should not have been admitted for any purpose.

Richard Muehe at trial testified that he did not tell the defendant that he had sexual relations with N.M.

> After the alleged sexual conduct with N.M. was over, totally over, I had told Janet . . . I didn't tell her that I had sexual relationship with her [N.M.], I didn't tell her that I had intercourse, I told her something had happened and I didn't want any more of it, I wanted to seek counseling. Ah—seek any way out of the situation out of what was happening because I could see what was coming.

> I didn't tell Janet we had intercourse. I told Janet that I had feelings, I told Janet that I was getting tired of alot (sic) of

1. *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, 653–654, decided September 26, 1991, in which the Indiana Supreme Court adopted Federal Rule 801(d)(1) for use in Indiana courts.

things, and a lot of it was the abuse of [N.M.].

Record at 117–121.

Therefore, the only evidence that is left to convict the defendant of "knowingly" placing her child in a situation that endangered her life and health is the defendant's confession. Her "confession" was also typewritten by a person from the Elkhart Police Department on a form provided for that purpose. Detective Westlake was asked if "the wording in the statement (was) Janet's herself?"

> The wording in the statement is a mixture of our conversation and then before I typed each sentence a discussion was held between us so I understood what she said, and I told her what I was going to type and then I typed it.

Record 139.

However, before the defendant's confession can be admitted, the state must establish the corpus delicti or the fact that the specific crime charged has actually been committed by someone. *Swafford v. State* (1981), Ind., 421 N.E.2d 596, 604.

Therefore, because Richard's prior statement is inadmissible and his in court testimony failed to corroborate that defendant "knowingly" neglected N.M., the corpus delicti has not been proven and the confession of the defendant should not have been admitted into evidence.

There was insufficient evidence to convict the defendant of knowingly placing her child in a situation that endangered her life and health by failing to take steps to cause her husband to cease having sexual intercourse with N.M.