**James Greg RICKEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 91A04–9502–CR–41.

Court of Appeals of Indiana.

Feb. 8, 1996.

---

Lee Griffith, Monticello, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

CHEZEM, Judge.

*Case Summary*

Appellant–Defendant, James Rickey ("Rickey") appeals his conviction for Child Molesting,[1] a class B felony. We affirm.

*Issues*

Rickey presents five issues for our review which we consolidate and restate as follows:

---

1. Ind.Code Sec. 35–42–4–3(a).

I. Whether the videotaped statement of the child victim was properly admitted into evidence;

II. Whether hearsay evidence regarding the child's statements should have been permitted;

III. Whether evidence of Rickey's second statement was properly admitted; and,

IV. Whether the State presented sufficient evidence.

### Facts and Procedural History

The facts most favorable to the judgment reveal that Rickey and his wife, Jennifer, resided with A.R., their infant daughter, and four year old B.C., Jennifer's son from a prior relationship. At all relevant times, B.C. referred to Rickey as "daddy."

On the evening of May 25, 1994, Rickey was at home watching the two children while Jennifer was at work. When Jennifer arrived home shortly after 9:00 p.m., Rickey informed her that he had sent B.C. to bed for watching an X-rated videotape. The following morning, B.C. stated that he and Rickey had "watched a dirty movie with naked ladies in it." Rickey changed the subject.

B.C. had never before expressed interest in sexual matters. Thus, after Rickey left for work, Jennifer asked B.C. what he had started to say about the videotape. B.C. again said that he and Rickey had watched a tape depicting naked ladies. Jennifer asked B.C. what else they had done the previous evening. B.C. responded that while watching the tape, "daddy had his pee pee out" and "daddy pulled his pee pee out and stuck it in my mouth and peed [sic] in mouth [sic]."

That same day, Jennifer took B.C. to the White County Welfare Department where caseworker Tracy Spence ("Spence") interviewed him. B.C. reiterated to the caseworker what he had told Jennifer. Thereafter, Jennifer took B.C. to the sheriff's department where Deputy Patrick Shafer ("Shafer") interviewed him. B.C. told Shafer that Rickey rented a "nasty old movie" and then B.C. repeated what he had told Spence and Jennifer.

That evening, Shafer interviewed Rickey who stated that he found B.C. watching an X-rated movie, and that he tried to teach him "the birds and the bees." (Ex. 2). After considerable questioning, Rickey stated that he pulled down his shorts, masturbated, and ejaculated in B.C.'s presence. He further stated that he had no physical contact with B.C., but that some of his ejaculate may have touched B.C.

On May 27, 1994, Spence again interviewed B.C., this time with his mother present, and with Shafer videotaping the interview. B.C. indicated that he and Rickey watched a movie in which girls removed their clothing. The child also stated that Rickey placed his "wiener" in B.C.'s mouth and "peed." Thereafter, Shafer again interviewed Rickey who gave a second statement. Rickey initially stated that B.C. stood by his knee as he masturbated. After further questioning, however, Rickey stated that B.C. "might of leaned over too far" and "got stuff on him." He also stated that B.C.'s head popped up "from his penis area" when he ejaculated, and that Rickey did not realize that B.C. "had his mouth down there and got anything on him."

A jury found Rickey guilty as charged. Rickey was given a twenty-year sentence with ten years suspended.

### Discussion and Decision

#### I. Child's Videotaped Statement

Rickey challenges the admission of B.C.'s videotaped statement on various grounds. He argues that it was hearsay, and that he was denied the procedural protection afforded him by Ind.Code § 35–37–4–6.[2] Additionally, he contends that he was denied his federal and state constitutional right to confront and cross-examine the witness. He

---

2. We note that in 1994, after the alleged molesting occurred but before the hearing regarding B.C.'s competency and the admission of the videotape, yet another amended version of Ind.Code § 35–37–4–6 went into effect. Although the trial judge correctly utilized the newest version of the child hearsay statute, Rickey quotes the old version. We address his arguments in light of the newest version of the child hearsay statute.

also claims the videotape was not of sufficient quality to permit its admission into evidence.

Indisputably, the videotaped statement was hearsay, and thus generally inadmissible. In order to determine whether it was admissible hearsay, we look to the relevant portions of the child hearsay statute, which state:

(a) This section applies to a criminal action under the following:

(1) Sex crimes (IC 35–42–4).

\*  \*  \*  \*  \*  \*

(b) As used in this section, "protected person" means:

(1) a child who is less than fourteen (14) years of age;

\*  \*  \*  \*  \*  \*

(c) A statement or videotape that:

(1) is made by a person who at the time of the trial is a protected person;

(2) concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the person; and

(3) is not otherwise admissible in evidence;

is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (d) are met.

(d) A statement or videotape described in subsection (c) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

\*  \*  \*  \*  \*  \* .

(B) is found by the court to be unavailable as a witness for one (1) of the following reasons:

\*  \*  \*  \*  \*  \*

(iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.

(e) If a protected person is unavailable to testify at the trial for a reason listed in subsection (d)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:

(1) at the hearing described in subsection (d)(1);

Ind.Code § 35–37–4–6. The child hearsay statute also provides that if such a videotape is admitted, the trial judge must outline certain criteria for the jury to consider. Ind. Code § 35–37–4–6(g). That the trial judge outlined this criteria is not in dispute. (R. 716).

■ A trial court's decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Shaw v. State*, 595 N.E.2d 743, 747 (Ind.Ct.App.1992), *reh. denied.* Accordingly, we review for an abuse of discretion the trial court's findings that the videotape was reliable and that B.C. was available for cross-examination.

■ We first review the trial court's determination that the time, content, and circumstances of the videotape provided sufficient indications of reliability. The videotaped interview occurred within two days of the incident and took place at the welfare office. Spence's interview of B.C. was neither adversarial or coached. B.C. was over four-years-of-age at the time of the interview, was not left alone with strange adults, and was not subjected to a stressful physical examination by a doctor. *Cf. Miller v. State*, 531 N.E.2d 466 (Ind. 1988), superseded in part by statute on other grounds as stated in *Poffenberger v. State*, 580 N.E.2d 995 (Ind.Ct.App.1991), *trans. denied.* While B.C. did make some contradictory statements during the interview, such inconsistencies do not necessari-

ly make his statement unreliable. *Cf. Casselman v. State*, 582 N.E.2d 432, 435 (Ind.Ct.App.1991) (noting that a testifying child need not be a model witness, have an infallible memory, or refrain from making inconsistent statements.). Further, B.C. described the incident using age-appropriate terms. We cannot say that the finding that the videotape was reliable was unsupported by the facts or that it was an abuse of discretion.

■ We next examine the finding that B.C. was available for cross-examination. At the pre-trial hearing regarding B.C.'s competency and the admissibility of the videotape, B.C. was brought to the witness stand by his mother and the following dialogue ensued:

The Court: Okay, [B.C.], listen to me, will you? No, okay. Uh, there will be some people asking questions of you today, and I want you to answer them and I want you to answer them truthfully. Okay? Do you have any questions that you want to ask him about the tape, or the circumstances, or any question you want to ask him at all, he is present for examination by you.

Ms. Griffith [defense counsel]: Yes, Your Honor, we do, we intend to avail ourselves of that and to cross examining him.

\* \* \* \* \* \*

Ms. Griffith: [B.C.], I'm Lee, do you remember me? I'm Mr. Rickey's lawyer, do you remember me? You don't remember me? Okay. Do you know the difference between the truth and a lie, [B.C.]? You don't. Can you answer out loud when I ask you a question? If I ask you questions, will you answer out loud? I can't hear what you said. Let the record reflect that the witness is nodding his head "yes."

The Court: Yes.

Ms. Griffith: [B.C.], do you know the difference between the truth and a lie? And once again, let the record reflect that he shakes his head "no." [B.C.], have you ever told a lie? Let the record reflect that he shakes his head "no." [B.C.] have you—what happens if you tell a lie? He shrugs. [B.C.], do you understand that today you're supposed to come here and tell the truth? He nods. What would happen if you didn't tell the truth today? Let the record reflect that he shrugs. Can you answer out loud? And let the record reflect that he shakes his head "no." [B.C.], do you remember having people ask you about your daddy? [B.C.], can you answer my questions today?

The Court: Do you have any other questions you want to ask him?

Ms. Griffith: I have nothing further, Your Honor.

(R. 212–16). After the trial court made its ruling that B.C. would be unavailable for trial and that the videotape would be admissible, Rickey's counsel argued that he had not been given a chance to cross-examine B.C. The trial court addressed that concern as follows:

[I]t is obviously—obvious from his demeanor in the Court today, that he cannot be—he is here and he was subject to examination, but if he's just going to nod and not be responsive to the questions, uh, the Court cannot—I'm not a ventriloquist, and there's no way that I can give him an oath, and *there's no way that I can let you cross examine him, other than what you did today, and what you did today, I think was as full a cross examination as a four year old child is going to be able to give you.*

(R. 279–80) (emphasis added).

Rickey renews his argument that he was "absolutely deprived of any opportunity to test the credibility of the complaining witness." We disagree. The trial court, in its discretion, combined the competency hearing with the hearing to determine the admissibility of the videotape. To that end, the trial judge specifically asked Rickey's counsel if she had any questions that she wanted to ask him "about the tape, or the circumstances, or any question [she] want[ed] to ask him at all, he is present for examination...." (R. 212). When Rickey's counsel appeared to be finished questioning B.C., the trial judge then asked if she had any other questions which she wanted to ask B.C. She did not. Rickey's counsel may not have elicited the most illuminating responses from B.C., but we cannot say the child was unavailable for cross-examination.

Although Rickey argues that B.C. should have been available for cross-examination *after* the determination of incompetency, we find no such requirement in Ind.Code § 35–37–4–6. We are confident that if the timing was so essential, the legislature would have expressly stated so when it substantially amended the child hearsay statute after *Shoup v. State,* 570 N.E.2d 1298 (Ind.Ct.App. 1991) (A panel of this court noted, "[i]t would further seem that the right [to cross-examine and confront the child] does not arise until the court has ruled that the child's statement or videotape will be admitted into evidence at the trial," yet ultimately held that the admission of a videotaped statement did not constitute reversible error.).

■ We hold that the trial court properly applied Ind.Code § 35–37–4–6 and did not abuse its discretion in admitting B.C.'s videotaped statement. Moreover, since the child hearsay statute is consistent with the purpose of the state and federal confrontation clauses, we hold that Rickey's federal and state constitutional rights to confrontation were not violated. Because we do not find that the admission of the videotape was error, we need not address whether its admission was harmless error.

We reject Rickey's argument regarding the quality of the videotape. The test for admissibility of a videotaped recording is whether the recording taken as a whole, or a crucial segment thereof, is of such poor quality it is likely to lead the fact finder to speculate as to its contents. *Casselman,* 582 N.E.2d at 438. After viewing the videotape in question, we have determined as a matter of law that the quality of the videotape is not so poor it should not have been admitted. *See id.* B.C.'s videotaped statement is of good sound quality and resolution. B.C.'s statement was taped in a welfare department room with the videotape clearly focused on B.C., Spence, and Jennifer. The room was well lit and small enough so the activities of the three were visible. The tape more than sufficiently showed B.C.'s demeanor and responses.

### II. Other Hearsay Evidence

■ Rickey next challenges the admission of the testimony of Jennifer and Shafer who each recounted statements which B.C. had told them. An error in the admission of hearsay warrants remedial action on appeal only if such error caused prejudice to the defendant's substantial rights. *Caley v. State,* 650 N.E.2d 54, 57 (Ind.Ct.App.1995), *reh. denied, trans. denied.* The admission of cumulative evidence is not prejudicial and by itself is not grounds for reversal. *Id.*

Assuming without deciding that the hearsay statements of Jennifer and Shafer should not have been admitted, we cannot say that Rickey's rights were harmed by these admissions. Both Shafer's and Jennifer's testimony was merely cumulative of significant independent evidence of Rickey's guilt, that being B.C.'s videotaped statement and Rickey's first statement. Accordingly, we cannot say that the jury's verdict was substantially swayed by the admission of the hearsay evidence. No reversible error is present.

### III. Rickey's Statement

■ Rickey contends that the State failed to establish a corpus delicti sufficient to justify the admission of evidence regarding his second statement to Shafer. To admit a confession into evidence, the corpus delicti of the crime must be established. *Scott v. State,* 632 N.E.2d 761, 766 (Ind.Ct. App.1994). Each element of the crime need not be proved beyond a reasonable doubt to establish the corpus delicti; independent evidence from which an inference may be drawn that a crime was committed in connection therewith is sufficient. *Regan v. State,* 590 N.E.2d 640, 644 (Ind.Ct.App.1992). There must be some evidence of probative value aside from the confession that tends to prove the commission of the crime. *Muehe v. State,* 646 N.E.2d 980, 982–83 (Ind.Ct.App. 1995), *trans. denied.*

■ Having already held that the admission of B.C.'s videotaped statement was not error, we have no difficulty holding that a sufficient corpus delicti was established by the State. The videotape, in combination with the unchallenged testimony regarding

Rickey's first statement,[3] the fact that B.C. spontaneously reported the incident to his mom, and the fact that Rickey immediately changed the subject, was probative evidence from which the fact finder could draw the inference that B.C. was molested. As such, Shafer's description of Rickey's second statement as well as the transcript of that statement were properly admitted.

We note that because there is ample evidence of corpus delicti in Rickey's case, we are not faced with the issue of whether corpus delicti is required in a child molest case which by its nature does not present such evidence. Accordingly, we do not decide that question today. *Cf. Finchum v. State*, 463 N.E.2d 304, 306–07 (Ind.Ct.App.1984) (assuming, without deciding, that for the purpose of determining the sufficiency of a fondling child molest case, a confession must be supported by independent evidence, or corpus delicti).

### IV. Sufficiency of the Evidence

Rickey claims that the "properly admitted evidence" was insufficient to sustain his conviction. We note that because we have concluded that the properly admitted evidence includes much more than what Rickey argued, the assertion of insufficient evidence is weaker than when Rickey's brief was written. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge witnesses' credibility. *Morrison v. State*, 613 N.E.2d 865, 868 (Ind. Ct.App.1993), *trans. denied.* "We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict." *Id.* When there is substantial evidence of probative value to support the conviction, the verdict will not be disturbed. *Nelson v. State*, 528 N.E.2d 453, 454 (Ind.1988).

Rickey invites us to reweigh the evidence, and the credibility of B.C. in particular. However, it is the jury's province to hear testimony and assess the truth thereof. *Wear v. State*, 593 N.E.2d 1179, 1179 (Ind. 1992). The jury in Rickey's case already heard and assessed the testimony. The jurors heard that B.C. reiterated substantially the same statement of child molesting to his mother, on videotape, and to Shafer. They also heard two of Rickey's own statements tending to indicate that he performed deviate sexual conduct with his four-year-old stepson. We will not substitute our judgment for the jury's based solely on Rickey's assertion of the dubiousness of B.C.'s statements. Accordingly, we decline Rickey's invitation to reweigh the evidence.

Affirmed.

SHARPNACK, C.J., and DARDEN, J., concur.

---

3.  See Facts and Procedural History section *supra* for a description of both of Rickey's statements.