Anthony Tyrone **THOMPSON**,
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10A04–9601–CR–8.

Court of Appeals of Indiana.

Feb. 23, 1998.

tempted Murder,[1] a class A felony, Robbery,[2] a class B felony, and Burglary,[3] a class A felony.

### Issues

Thompson raises three issues which we restate as:

I.  Whether the trial court properly denied his motion to suppress;

II. Whether there was sufficient evidence to support his conviction for burglary; and,

III. Whether his conviction violates his constitutional protection against double jeopardy.

### Facts and Procedural History

The facts most favorable to the verdict show that on March 18, 1995, Thompson, age 16, went to the home of his former step-father, John Burton ("Burton"), to steal some money. Thompson, accompanied by three friends and his younger brother, Maurice, removed the screen to a bedroom window and opened the window with a crowbar. While the others waited outside, Thompson and Jeffrey Hollins ("Hollins") entered Burton's home. Thompson struck Burton in the head with the crowbar and then Burton's keys, billfold and gun were taken from him. The two intruders took Burton's strong box, which contained a large amount of cash, and another gun from Burton's bedroom. While Burton was trying to crawl towards the door, Thompson fired a shot at him, which passed through Burton's left arm and penetrated his upper left chest.

At the time of the incident, Thompson was living with Kathy Rankin ("Rankin"), his former step-mother and aunt.[4] The next day, Thompson told Rankin what had happened and she suggested that he tell the police about his involvement. Rankin called Detective Hall ("Hall") and told him that Thompson wanted to make a statement. On March

Dawn R. Elston, Chief Public Defender, Jeffersonville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

### OPINION

RATLIFF, Senior Judge.

#### Case Summary

Appellant-Defendant, Anthony Thompson ("Thompson") appeals his convictions for At-

1.  Ind.Code § 35–42–1–1; Ind.Code § 35–41–5–1.

2.  Ind.Code § 35–42–5–1.

3.  Ind.Code § 35–43–2–1.

4.  Burton's ex-wife, Terry Burton, is Thompson's mother. Rankin is Terry Burton's sister and Rankin was married to Thompson's father, Kenneth Rankin, now deceased.

20, Hall went to Thompson's mother's home to obtain her consent to interview her son. She signed a waiver of rights form, but did not want to be present during Thompson's statement. Hall then went to Rankin's home and requested that Thompson come to the police station. At the station, Thompson requested that Rankin be present. When Rankin arrived, Thompson signed the waiver of rights form that his mother had previously signed and Rankin signed the form as a witness. Thompson then gave a statement which was tape-recorded. On March 28, 1995, an arrest warrant was issued charging Thompson with attempted murder, robbery, and burglary.

Prior to trial, Thompson filed a motion to suppress the statement, arguing that he did not voluntarily, knowingly, and intelligently waive his right to remain silent. Thompson also contended that his questioning by the police violated the juvenile waiver statute, Ind.Code § 31–32–5–1. His motion was denied and Thompson was tried and found guilty by a jury of attempted murder, robbery, and burglary.

### Discussion and Decision

#### I.

Thompson argues that his statement to the police was taken in violation the juvenile waiver statute. Ind.Code Section 31–32–5–1 sets forth guidelines for police who receive a statement from a juvenile:

Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:

(1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;

(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver.

However, "[i]f a juvenile, who is not in custody, gives a statement to police, neither the safeguards of the *Miranda*[5] warning nor IND. CODE 31–6–7–3 [now § 31–32–5–1] applies to him *under most circumstances.*" *Sevion v. State*, 620 N.E.2d 736, 738 (Ind.Ct.App.1993) (emphasis in original). For an interrogation to be custodial in nature, one does not necessarily have to be under arrest. *Id.* To be custodial in the non-arrest context, the interrogation must commence after the person's freedom of action has been deprived in any significant way. *Id.* The law enforcement officer's duty to give *Miranda* warnings does not attach unless "there has been such a restriction on a person's freedom as to render him 'in custody.' " *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind. 1995) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977)).

Here, Thompson was not in formal custody nor was his freedom of action limited at the time he gave his statement to the police. After Thompson had been advised of his rights and had signed the waiver of rights form, he agreed that he had voluntarily come to the police station to make a statement. In addition, he stated that he did not feel like a prisoner and had not been promised anything. Any failure on Hall's part to strictly follow the requirements of Ind.Code § 31–32–5–1 would not render Thompson's statement inadmissible. The trial court did not err in denying Thompson's motion to suppress the statement.

#### II.

Thompson argues that the evidence supporting his conviction for burglary was insufficient. He claims that his brother, Maurice, through whose bedroom Thompson and Hollins entered Burton's home, gave them permission to enter the home. Maurice testified that he did not consent to the plan to enter

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Burton's home, but merely that he told them that his bedroom window happened to be unlocked. Thompson removed the screen and used a crowbar to open the window far enough until it could be pushed up.

When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Rickey v. State,* 661 N.E.2d 18, 24 (Ind.Ct. App.1996), *trans. denied.* We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the judgment. *Id.* When there is substantial evidence of probative value to support the conviction, the judgment will not be disturbed. *Id.*

In order to meet its burden on the burglary count, the State had to prove beyond a reasonable doubt that Thompson "[broke] and enter[ed] the building or structure of another person, with intent to commit a felony in it … result[ing] in either bodily injury or serious bodily injury." Ind.Code § 35–43–2–1. In order to establish that a breaking has occurred, the State need only introduce evidence from which the trier of fact could reasonably infer that the slightest force was used to gain unauthorized entry. *Bellmore v. State,* 602 N.E.2d 111, 124 (Ind. 1992). "Breaking is proved by showing that even slight force was used to gain unauthorized entry including opening an unlocked door." *Henley v. State,* 522 N.E.2d 376, 379 (Ind.1988). Thompson used force to remove the screen and open the window. Maurice did not consent to the entry; indeed, Thompson testified that Maurice did not know of the plan to rob Burton. We conclude that there is substantial evidence of probative value to sustain the verdict for burglary.

### III.

Thompson argues that his convictions for attempted murder and burglary violate the Double Jeopardy Clauses of the Indiana Constitution[6] and United States Constitution.[7] He contends that the enhancement of the burglary charge for bodily injury relied upon the same act of shooting Burton upon which the attempted murder charge relied. "Double jeopardy analysis requires us to discern whether a petitioner has been convicted or punished more than once for the 'same offense.'" *Gregory–Bey v. State,* 669 N.E.2d 154, 157 (Ind.1996).

In analyzing whether two offenses are the same, we employ the test announced in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

*Gregory–Bey,* 669 N.E.2d at 157. We do not look to the manner in which the offense is charged. *Carter v. State,* 686 N.E.2d 834, 838 (Ind.1997). Rather we determine whether each *statute* requires proof of an additional fact which the other does not. *Id.*

It is clear that each statute requires proof of an additional fact which the other does not. Attempted murder requires a substantial step towards a killing; class A burglary requires that a breaking occur, resulting in bodily injury. We find no double jeopardy violation.[8] Moreover, Burton suffered two injuries: being beaten over the head with a crowbar, and being shot in the chest. It is reasonable to infer that the enhancement of the burglary charge was based upon Burton's head injury.

Affirmed.

DARDEN and STATON, JJ., concur.

---

6. Ind. Const. art. I, § 14.

7. U.S. Const. amend. V.

8. Our supreme court has not yet decided whether double jeopardy claims under Article 1, section 14 of the Indiana Constitution are entitled to

an analysis separate and distinct from the federal constitution. *See Valentin v. State,* 688 N.E.2d 412, 413 (Ind.1997). As Thompson has not provided a separate state constitutional law argument, we also decline to decide this question.