**Jamell L. DUPREE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–9902–CR–55.**

Court of Appeals of Indiana.

July 14, 1999.

■

---

Jeffrey L. Sanford, South Bend, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

Jamell Dupree appeals his conviction for one count of burglary as a class B felony. We affirm.

### Issues

I.  Whether the trial court improperly denied Dupree's motion for a mistrial where the jury panel was exposed to an improper remark.

II. Whether the evidence is sufficient to support Dupree's conviction for burglary.

### Facts and Procedural History

On September 3, 1997, Semella Moore was sitting at her kitchen table paying bills. Suddenly, the door opened and Jamell Dupree entered the house and snatched Moore's purse off of the kitchen table. The purse contained approximately four hundred dollars. Patricia Rosales was approaching Moore's home to visit with her. As Dupree fled, he pushed Rosales out of the way. Rosales followed Dupree and saw him run into an apartment. Rosales returned to her apartment and called the police. When the police arrived, Rosales told them where Dupree had gone. The police went to the apartment into which Dupree had run and asked him to step outside. Dupree agreed to go outside and Moore and Rosales identified him as the man who had taken Moore's purse. Dupree was charged with burglary as a class B felony.

At trial, both Moore and Rosales identified Dupree as the burglar. Carrie Ruiz, an eight-year-old girl who had witnessed Dupree fleeing Moore's apartment, also identified Dupree as the person she had seen running from the apartment. Dupree was convicted by jury of burglary as a class B felony.

During the trial, the jurors were permitted to take a lunch break. When one of the jurors returned to the courtroom, she informed the bailiff that she had spoken to an employee of a coffee shop in the basement of the courthouse and the employee made several improper comments to her regarding the trial. Specifically, the employee stated, "well, they'll never pick me for jury duty because I know everybody in the courthouse. And besides, I figure if he's charged with something and brought—if he's coming to trial, that probably means he did something." Record at 165. The juror reported this comment to the bailiff who then told the trial

court judge what had occurred. The trial court judge questioned the juror about the comments and, after learning that the juror had relayed the story to the bailiff in the presence of the other jurors, brought in the entire jury to be questioned. The trial court judge then asked the jurors as a group whether these comments "ma[d]e any difference" to them in their determination of the outcome of the trial. The jurors indicated that the comments would not. The judge then discussed the impropriety of the comments with the jury and asked them again, as a group, whether the comments were "going to mean anything to any of [them] in deciding this case, ..." Again, the jurors responded in the negative. Record at 167. The judge then admonished the jury. At this point, Dupree's counsel requested that the trial court judge remove the jurors from the courtroom and interrogate them individually, outside of the presence of the other jurors, regarding the comments. The judge refused to interrogate each juror outside of the presence of the other jurors, but did ask the jurors individually, by name, whether the comments made "one wit [sic] of difference to [them] in deciding this case." Record at 170. Each juror responded, "No." Record at 171. Dupree's counsel then moved for a mistrial, and the trial court denied the motion.

### Discussion and Decision

#### I.  Motion for Mistrial

▮ "Declaring a mistrial is an extreme action, one warranted only when no other action can be expected to remedy the situation." *Ratcliffe v. State*, 553 N.E.2d 1208, 1210 (Ind.1990). We review a trial court's decision whether to grant a mistrial under an abuse of discretion standard and will afford the court great deference on appeal. *Kelley v. State*, 555 N.E.2d 140, 141 (Ind.1990). To succeed on appeal from the denial of a motion for mistrial, Dupree must demonstrate that the conduct in question was so prejudicial and inflammatory that he was placed in a position of "grave peril." *Id.*

▮ Here, Dupree argues that the trial court erred by failing to declare a mistrial after the jury was exposed to the improper comment made by the courthouse coffee shop employee. Specifically, Dupree asserts that the trial court's failure to interrogate each

juror separately outside of the presence of the other jurors constituted reversible error. In making this assertion, Dupree relies on *Lindsey v. State*, 260 Ind. 351, 295 N.E.2d 819 (1973).

In *Lindsey*, the defendant was on trial for burglary. At the end of the State's case in chief, the cause was continued until the next morning and the jury separated. That evening, a newspaper article appeared in the local newspaper. *Lindsey*, 295 N.E.2d at 821. The next day, the defendant filed a motion for a mistrial. The trial court addressed the jury as a group, admonished them, and then denied the defendant' s motion. Following a guilty verdict, the court conducted an examination of the jurors and asked whether any of them had been exposed to the article. Several jurors were exposed to the article in some way, although only two had read it in its entirety. *Id.* at 822. These two jurors were questioned as to whether the exposure had influenced their decision and they stated, under oath, that they were not influenced by the article. Accordingly, the guilty verdict was permitted to stand. *Id.* The defendant appealed and our supreme court reversed the trial court's decision to deny the motion for mistrial holding that the defendant was entitled, as a matter of right, to have the jury polled to determine which jurors, if any, had been exposed to the article. *Id.* at 824. In so holding, the supreme court also outlined the proper procedure that should follow when a juror or jurors might have been exposed to improper publicity. The *Lindsey* procedure provides in pertinent part:

> Upon a suggestion of improper and prejudicial publicity, the trial court should make a determination as to the likelihood of resulting prejudice, both upon the basis of the content of the publication and the likelihood of its having come to the attention of any juror. If the risk of prejudice appears substantial, as opposed to imaginary or remote only, the court should interrogate the jury collectively to determine who, if any, has been exposed. If there has been no exposure, the court should instruct upon the hazards of such exposure and the necessity for avoiding exposure to out-of-court comment concerning the case. If any of the jurors has been exposed, he

must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of "no exposure."

*Id.*

■ We note that Dupree is correct in asserting that *Lindsey* applies to situations occurring after the jury has been selected and the trial is in progress. *See Seeley v. State*, 544 N.E.2d 153, 156 (Ind.1989). However, we cannot conclude that the trial court committed reversible error by not interrogating the jurors individually. Here, only one juror was directly exposed to the inappropriate, out-of-court comments and the judge interrogated the juror regarding these comments outside of the presence of the other jurors. Because this juror reported the comments to a bailiff in the presence of the other jurors the other jurors were, in some sense, "exposed" to the improper comment. However, the trial court judge took prompt steps to evaluate the risk of prejudice and rectify the situation. After the exposed juror told the bailiff what had been said to her, the bailiff and the juror reported the matter to the trial court judge who immediately brought the jury out as a group to be questioned regarding the comment. Record at 163–64. The trial court judge concluded that the courthouse employee's comment did not affect the jurors' ability to form an opinion as to Dupree's guilt or innocence. In fact, the comment was merely the employee's opinion that if a person is charged with a crime, he must be guilty. The employee did not mention specific evidence or facts surrounding the case. The court then determined that there was no need to interrogate the jurors outside of the presence of the other jurors. However, the judge did ask the jurors, twice, as a group, whether the comment "ma[d]e any difference" to them. On both occasions the jurors indicated that it did not. Record at 166, 167. The judge then asked each juror individually, by name, whether the comment "ma[d]e any difference" to them. Again, each juror responded, "No." Record at 171–

72. The court also admonished the jurors as a group, thus complying with remedial procedures set forth by this court in *Threats v. State*, 582 N.E.2d 396, 401 (Ind.Ct.App.1991), *trans. denied*, to ensure that the verdict was free of improper influence. *See Ridenour v. State*, 639 N.E.2d 288, 293 (Ind.Ct.App.1994).

In addition to setting out the proper procedure to be followed in a situation in which a juror is exposed to out-of-court comments or publicity, the *Lindsey* court also stated:

> At all stages, the trial court must have discretion to make the determination, within the context of the particular circumstances; and a denial of a motion to interrogate the jury will be reversible error, only if we can say that there has been substantial peril. If the jury has been interrogated and admonished, as set forth above, the continuance of the trial, over the imperiled party's motion for a mistrial, will be reversible error only if it can be said, after giving the decision of the trial judge the benefit of all reasonable doubt, that the peril was such as to be uncurable by instruction.

*Id.* at 824. Dupree has failed to present substantial evidence of prejudice by the trial court's decision not to interrogate the jurors outside of the presence of the other jurors. There is no indication that Dupree has been put at substantial risk by the trial court's action. In view of the facts here, no reversible error has been demonstrated.

### II. Sufficiency of the Evidence

■ Dupree also claims that there is insufficient evidence to support his conviction for burglary. Specifically, Dupree argues that the three eye-witness identifications supporting his conviction were "dubious." Appellant's Br. at 12. We disagree. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Rickey v. State*, 661 N.E.2d 18, 24 (Ind.Ct.App.1996), *trans. denied*. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value to support the conviction, the judgment will not be disturbed. *Id.*

■ Dupree was charged and convicted of burglary, as a class B felony. In order to convict Dupree of burglary, the State must prove beyond a reasonable doubt that Dupree broke and entered the building or structure of another person, with intent to commit a felony in it. The offense is a class B felony if the building or structure is a dwelling. *See* IND.CODE § 35-43-2-1. We note that a "breaking" is proved by showing that even the slightest force was used to gain unauthorized entry. This forced entry may include opening an unlocked door. *Thompson v. State*, 692 N.E.2d 474, 477 (Ind.Ct.App.1998).

Here, Semella Moore testified that Dupree entered her residence, without her consent, and took her purse. Patricia Rosales testified that she witnessed Dupree fleeing from Moore's residence and followed him to his mother's apartment. Lastly, Carrie Ruiz testified that she also saw Dupree running with a purse and that she saw him run into an apartment. Dupree claims that these identifications are "flawed" in some way. We note, however, that this court has previously upheld burglary convictions where the evidence consisted only of single eye-witness testimony, notwithstanding the defendant's assertions that the identification could have been flawed in some way. *See Harris v. State*, 518 N.E.2d 805, 807 (Ind.1988) (affirming burglary conviction supported by victim's identification of defendant, despite defendant's contention that the light was insufficient to be able to identify assailant and that the victim, who wore glasses, was not wearing glasses at the time of the attack.). Here, there were three eye-witnesses who testified that Dupree was the person who broke into Moore's home or who was seen fleeing her residence. We decline Dupree's invitation to reweigh the credibility of the witnesses' testimony.

Based on the foregoing, we conclude that there was sufficient evidence to support Dupree's conviction for burglary.

Affirmed.

BAILEY, J. and HOFFMAN, Sr.J. concur.