**Brent CALLIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 39A04–9606–CR–252.

Court of Appeals of Indiana.

Aug. 20, 1997.

Merritt K. Alcorn, Eckert Alcorn & Goering, Madison, for Appellant–Defendant.

Jeffrey. A. Modisett, Attorney General, Geoff Davis, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

CHEZEM, Judge.

*Case Summary* [1,2]

Appellant–Defendant, Brent Callis ("Callis"), appeals his conviction for Voluntary Manslaughter, a class A felony.[3] We affirm.

---

1. Ind.Appellate Rule 8.3(A)(4) requires the statement of the case in the brief of Appellant to contain a verbatim statement of the judgment. Counsel for Appellant is advised to observe this Rule of Appellate Procedure.

2. Oral argument was held in Indianapolis on July 17, 1997.

3. Ind.Code § 35–42–1–3.

*Issues*

Callis raises six issues for our review that we restate as:

I.   Whether the exclusion of his attorney from a polygraph interview violated his right to counsel guaranteed by Indiana Const. art. I, § 13;

II.   Whether the polygraph interviews violated his right against self-incrimination guaranteed by U.S. Constitution amend. V, and Indiana Const. art. I, § 14;

III.   Whether the trial court properly limited the testimony of his expert witness;

IV.   Whether he received ineffective assistance of counsel prior to his arrest;

V.   Whether there was sufficient evidence to support the verdict; and,

VI.   Whether the failure to record his polygraph interview violated his right to due process guaranteed by Indiana Const. art. I, § 12.

*Facts and Procedural History* [4]

The facts most favorable to the verdict show that on November 19, 1994, Callis, then sixteen years old, was visiting his girlfriend, Jennifer Nicole Washer ("Niki"), then fourteen years old, at her home. A few hours later, Niki received a gunshot wound to her head and Callis telephoned for an ambulance. Niki died at the hospital approximately twenty minutes later. Callis initially explained to the police that Niki had retrieved her father's gun and threatened to kill herself, but that when he tried to take the gun away from her, it went off. Callis was interviewed at the police station that evening and again on December 7th. His mother and attorney were present for both interviews.

The police requested that Callis take a polygraph examination on December 12th to be conducted by the state police. Callis was

accompanied by his mother and attorney, who both waited outside the room during the examination. At the conclusion of the examination, Callis was questioned by the examiner. Because of concerns about Callis's honesty, another polygraph examination was scheduled for December 15th. Callis again was accompanied by his mother and attorney, who again both waited outside the room during the examination. At the conclusion of this second examination, the examiner interviewed Callis about inconsistencies in his story. Callis stated that Niki had given him the gun after she had threatened to kill herself and that they had argued about the amount of time they spent together. The interviewer stated:

> I asked [Callis], "Did you just get so mad that you just lost control and shot her," and his reply was, "I guess you could say that," and then he added to that, "I did not mean to kill . . .," or "did not mean to murder her."

(R. 1876). Callis asked to speak with his attorney and the interview ended. Callis was then arrested for Niki's murder.

Callis filed a Motion to Suppress Statements and Polygraph Test Results. The trial court ordered that the results of the polygraph examination would not be admissible, but that the two post-polygraph interviews "were non-custodial, done after the defendant had ample time to consult with both a custodial parent and counsel, and were free and voluntary statements" and may be admitted into evidence. (R. 130). Upon interlocutory appeal of the trial court's order, another panel of the Court of Appeals affirmed the order by an unpublished memorandum opinion dated September 27, 1995.[5] A divided Supreme Court denied transfer of the case.

Following a jury trial, Callis was found guilty of voluntary manslaughter and reckless homicide and judgment was entered on voluntary manslaughter.

---

4.   We note at the outset Appellant's failure to make marginal notations on *each* page of the transcript of evidence indicating the name of the witness and whether the examination is direct, cross, or redirect as required by Ind.Appellate

Rule 7.2(A)(3)(a). This failure made our review of the ten volume record more difficult.

5.   *Callis v. State*, No. 39A05–9504–CR–128, 655 N.E.2d 1265 (Ind.Ct.App. Sept.27, 1995).

## *Discussion and Decision* [6]

### I. Right to Counsel

Callis first argues that he was denied his right to counsel guaranteed by Article I, § 13 of the Indiana Constitution when he was interviewed outside the presence of his attorney. He contends that the forms signed by his mother and himself were not valid waivers of his rights and did not comply with Indiana's juvenile waiver statute, Ind. Code § 31–32–5–1 (formerly Ind.Code § 31–6–7–3). The State argues that the admissibility of Callis's statements was determined on interlocutory appeal and is now the law of the case. Law of the case designates the doctrine that an appellate court's determination on a legal issue is binding on both the trial court on remand and an appellate court on a subsequent appeal given the same case and substantially the same facts. *Hinds v. McNair*, 413 N.E.2d 586, 607 (Ind.Ct.App. 1980) (citing *Fair Share Organization v. Mitnick*, 245 Ind. 324, 198 N.E.2d 765 (1964), *cert. denied*, 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964)). We first examine the legal issue decided in the prior appeal.

This Court addressed "only the following restated issue upon our determination that it is dispositive: Were the interviews in question custodial in nature?" [7] (R. 214). The panel concluded that Callis's statements were made during a noncustodial interrogation, were therefore admissible, and stated that it need not determine whether the provisions of Ind.Code § 31–32–5–1 were satisfied. We now conclude that the issue of whether Callis's right to counsel was violated, though resting on similar facts, was not decided in that opinion.

Callis correctly contends that the question of when an interrogation becomes custodial is not determinative of when the right to counsel attaches. The guarantees of an accused's right to counsel in both the Sixth Amendment and Art. I, Section 13 of the Indiana Constitution apply "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Jones v. State*, 655 N.E.2d 49, 54 (Ind.1995) (quoting *U.S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). The application of this rule depends upon whether the challenged event occurred at a "critical stage" of the proceedings. *Manley v. State*, 410 N.E.2d 1338, 1342 (Ind.Ct.App. 1980). The proper test for determining whether a particular proceeding is a "critical stage," to which the assistance of counsel guarantee applies, is whether the defendant is confronted with the intricacies of the law or the advocacy of the public prosecutor or prosecuting authorities. *Williams v. State*, 555 N.E.2d 133, 136 (Ind.1990). In this state, the commencement of prosecution is governed by Ind.Code § 35–34–1–1 in which the filing of an information or indictment begins the formal criminal process. *Little v. State*, 475 N.E.2d 677, 683 (Ind.1985).

Callis asserts that polygraph examinations and post-test interrogations constitute critical stages in the proceedings, triggering the right to counsel, citing *Casada v. State*, 544 N.E.2d 189, 198 (Ind.Ct.App.1989), *trans. denied*, and *Greenlee v. State*, 477 N.E.2d 917, 920 (Ind.Ct.App.1985). In *Greenlee*, the defendant consented to a polygraph examination during pre-trial plea negotiations. Following the examination, Greenlee made a damaging admission to the examiner. Greenlee challenged the admissibility of the statement on appeal. The court concluded that the examination and interrogation were critical stages of the proceedings, but that Greenlee had waived his right to counsel. In *Casada*, the defendant, *prior* to being arrested or charged, requested a polygraph examination and signed an agreement stipulating to the admissibility of the results. After his conviction, Casada appealed the admission of the polygraph examination results. The *Casada* court concluded that the signing of the stipulation agreement was not a critical stage and the right to

---

**6.** Citations to cases should follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). Ind.Appellate Rule 8.2(B)(1). Counsel for Appellant is advised to observe this Rule.

**7.** The record does not disclose what other issues Callis raised in that appeal.

counsel had not attached because Casada "had not been arrested, arraigned or indicted at that time." *Casada*, 544 N.E.2d at 198. The court stated that polygraph examinations and post-test interrogations were critical stages triggering the right to counsel, citing *Greenlee*, but concluded that Casada had waived his right to counsel concerning the examination itself.

The *Casada* court, however, failed to distinguish between pre- and post-arrest/indictment proceedings. The court stated that "[t]he sixth amendment, through the fourteenth amendment of the United States Constitution, and article 1 § 13 of the Indiana Constitution provide an accused the right to counsel during a criminal proceeding or at a critical stage, *whichever is earlier.*" *Id.* at 197–98 (emphasis added). We find no support for the assertion that the right to counsel can attach *earlier* than the initiation of criminal proceedings.[8] We consider the *Casada* court's statement that "[e]ven though an accused's sixth amendment right to counsel arising from an adversarial proceeding has not yet attached, an accused may have the right to counsel," *id.* at 198, to be a misleading statement of the law.[9]

Callis's reliance on *Greenlee* and *Casada* is misplaced. Greenlee's polygraph examination occurred after the initiation of criminal proceedings and the attachment of his right to counsel. Although Casada's polygraph examination preceded his arrest, the court concluded that his "sixth amendment right to counsel had not attached generally." *Id.* at 199. We conclude that Callis's post-examination interview did not constitute a critical stage because criminal proceedings had not been commenced. We hold that excluding Callis's attorney from the interview did not violate his right to counsel and that his statements were admissible.[10]

On this issue, Callis further argues that the involvement of the county coroner in investigating Niki's death somehow changes the circumstances of Callis's interviews with the police into criminal proceedings, invoking the right to counsel. An investigation is not a criminal proceeding. *See* Ind.Code § 35–34–1–1.

## II. Right Against Self–Incrimination

Callis next argues that his post-polygraph statements to the police should be suppressed because they were obtained in violation of his right against self-incrimination guaranteed by the fifth amendment to the U.S. Constitution and article I, § 13 of the Indiana Constitution. He contends that he was in custody and did not validly waive his constitutional rights.

The fifth and fourteenth amendments to the United States Constitution guarantee a suspect the right to the presence and advice of counsel during custodial interrogation by the police. *Loving v. State* 647 N.E.2d 1123, 1125 (Ind.1995). The United States Supreme Court held in *Miranda* that a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way" must, before being subjected to interrogation by law enforcement officers, be advised of his rights to remain silent and to the presence of an attorney and be warned that any statement he makes may be used as evidence against him. *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). Statements elicited in violation of this rule are generally inadmissible in a criminal trial. *Id.* The law enforcement officer's duty to give *Miranda* warnings does not attach unless "there has been such a restriction on a person's freedom as to render him 'in custody.' " *Id.* (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977)).

The resolution of this issue was determined at Callis's interlocutory appeal. As discussed above, the law of the case is that Callis was not in custody at the time of his

---

8. *Cf. Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972–73, 18 L.Ed.2d 1199 (1967) (holding that event occurring prior to the initiation of criminal proceedings may only be challenged on due process grounds, which is independent of any right to counsel claim).

9. Of course, an accused has the right to consult with his or her private attorney at any time.

10. We thus need not determine whether the provisions of the juvenile waiver statute, Ind.Code § 31–32–5–1, were satisfied.

statements to the police. We conclude that the police were not required to advise Callis of his *Miranda* rights, that those rights were not violated, and that his statements were admissible.[11]

### III. Expert Testimony

■ Callis sought to utilize the testimony of Dr. Richard Ofshe ("Ofshe"), a social psychological expert in the field of coercive police interrogation and the phenomenon of false or coerced confessions. The trial court issued a pre-trial order indicating that:

> Dr. Ofshe's testimony shall be limited to testimony regarding the circumstances surrounding the statements [made by the defendant to the police] as it may affect the weight to be given such testimony. He shall not be permitted to testify to the defendant's intent, guilt or innocence, or the truth or falsity of whether a witness has testified truthfully, or to legal conclusions.

(R. 345). At trial, Ofshe testified generally about false confessions and the State offered no objection as to his expertise. When asked his opinion about the interrogation process in this case, the trial court sustained an objection to the testimony stating "my problem with that particular question is that it does invade the province of the jury in terms of the reliability of the statement.... what he cannot do is state his opinion as to the reliability of this particular confession." (R. 2063).

Callis made an offer of proof in which Ofshe testified that there was a "great dispute between the accounts" of Callis and the witnessing officers, (R. 2066), that "we have three different versions of an inculpatory statement . . . all of which are denied by Mr. Callis," (R. 2068), and that "[s]omeone is telling the truth and someone is lying, and there's no way to reconcile those two things." (R. 2074). Following a later objection to

Ofshe's direct testimony, the trial court discussed Ind.Evidence Rule 704(b), which prohibits opinion testimony regarding the truthfulness of witnesses.[12] Callis's counsel agreed that during the prior offer of proof Ofshe did in fact testify "as to which witness had testified truthfully," contrary to Evid.R. 704(b). (R. 2088).

■ The admissibility of expert testimony is within the sole discretion of the trial court and reversal is warranted only for abuse of that discretion. *Henson v. State*, 535 N.E.2d 1189, 1192 (Ind.1989). Neither lay nor expert witnesses are competent to testify that another witness is or is not telling the truth. *Shepherd v. State*, 538 N.E.2d 242, 243 (Ind.1989). Such testimony is highly improper and invades the province of the jury in determining what weight to place on a witness's testimony. *Head v. State*, 519 N.E.2d 151, 152 (Ind.1988).

■ Callis contends that the proffered testimony merely concerned the reliability of the interrogation *process*, not the truthfulness of witnesses; that is, Ofshe's testimony would have gone to the voluntariness of Callis's statements. Even if the court preliminarily determines that the statement is voluntary and admits it for the jury's consideration, then the defendant is still entitled to dispute the voluntariness of the statement once it is presented to the jury. *Morgan v. State*, 648 N.E.2d 1164, 1170 (Ind.Ct.App.1995), *aff'd in part and rev'd in part*, 675 N.E.2d 1067 (Ind.1996). We conclude that the trial court properly admitted Ofshe's testimony regarding the phenomenon of coerced confessions and properly excluded his opinion about Callis's interrogation. As can be seen in Callis's offer of proof, the aim of Ofshe's excluded testimony was to express an opinion as to which witness was telling the truth about Callis's

---

11. Although we are bound by the law of the case, we believe that Callis's mother and attorney were blind-sided by the law enforcement officers. In agreeing to submit to a polygraph examination, knowing that the results would not be admissible without their stipulation, Callis's mother and attorney did not anticipate that Callis would be subject to a post-polygraph interrogation. We would have excluded Callis's statements at both post-test interrogations. We do not condone the use of such tactics.

12. "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Evid.R. 704(b).

statements. Such testimony is not admissible pursuant to Evid.R. 704(b).

### IV. Right to Effective Counsel

■ Callis argues that his right to the effective assistance of counsel was denied by the behavior of his pre-arrest counsel. A police officer observing Callis's December 12th interview testified during cross-examination as follows:

Q: Did you recall the statement being made by [counsel] to Brent Callis that if he did not tell the truth that he and his mother could walk home?

A: Are you asking me if I recall those exact words . . .

Q: Do you recall.

A: . . . or something similar to that?

Q: Yes.

A: Yes.

(R. 1487). Callis contends that his counsel's statement amounted to a threat and that this deficient performance adversely affected the outcome of the proceedings.[13]

We earlier determined that Callis's right to counsel had not been violated because it had not yet attached at the time of his statements to the police. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). Thus, the right to effective assistance of counsel is derived from the right to counsel itself. Because Callis's right to counsel had not attached during the noncustodial interview, we find that his right to effective assistance of counsel had not been violated.

### V. Sufficiency of the Evidence

■ Callis next contends that there was insufficient evidence presented at trial to support the verdict. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Rickey v. State,* 661 N.E.2d 18, 24 (Ind.Ct.App.1996), *trans. denied.* We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the judgment. *Id.* When there is substantial evidence of probative value to support the conviction, the judgment will not be disturbed. *Id.*

■ In order to meet its burden in this case, the State had to prove beyond a reasonable doubt that Callis "knowingly or intentionally kill[ed] [Niki] while acting under sudden heat . . . by means of a deadly weapon." Ind.Code § 35–42–1–3. Callis contends that the State failed to present evidence showing his intent to kill, that there was conflicting testimony about the position of the gun when it was fired, and that his alleged confession was insufficient to support the verdict.

■ The evidence showed that during an interview with the police, Callis admitted that he had gotten the gun away from Niki, that he was upset and almost hysterical, and that he then pulled the trigger. One's intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Owens v. State* 544 N.E.2d 1375, 1377 (Ind.1989). Firing a gun in the direction of an individual is substantial evidence from which a jury may infer intent to kill. *Id.* Inconsistencies go to the weight and credibility of the testimony, the resolution of which is within the province of the trier of fact. *Jordan v. State,* 656 N.E.2d 816, 818 (Ind.1995).

We conclude that there was sufficient evidence of probative value to support the verdict that Callis knowingly or intentionally shot Niki while under sudden heat.

### VI. Failure to Record Interviews

■ Callis lastly argues that the failure of the police to tape record his December 12th and December 15th post-polygraph interviews violated his right to due process guaranteed by the Indiana Constitution. He cites cases from Alaska and Minnesota for the proposition that electronic recording is a mandatory safeguard ensuring the voluntariness of confessions. *See Stephan v. Alaska,*

---

13. Callis fails to point out, however, that this testimony was admitted over the State's hearsay objection, which was overruled because "it's not a statement offered for the truth of it." (R. 1486). In addition, during his trial testimony, Callis's pre-arrest counsel did not testify that he made any such statement.

711 P.2d 1156 (Alaska 1985); *Minnesota v. Scales,* 518 N.W.2d 587 (Minn.1994). Both *Stephan* and *Scales* are limited to the recording of custodial interrogations and are founded solely on their respective state constitutions. *Stephan,* 711 P.2d at 1158; *Scales,* 518 N.W.2d at 592. These cases are not persuasive when considering a noncustodial interview, nor are they applicable to a claim based on the Indiana Constitution. The failure to tape record his interviews did not deprive Callis of due process of law.

Affirmed.

DARDEN, J., concurs.

HOFFMAN, J., concurs except as to footnote eleven (11) in which he dissents.