Alan STOKER, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 33A01–9701–CR–19.

Court of Appeals of Indiana.

April 6, 1998.

Michael R. Burrow, Jeffrey S. Neel, Wolf & Burrow, Greenfield, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Alan R. Stoker, Jr. (Stoker), appeals his convictions upon four counts of Dealing in a Controlled Substance,[1] as Class C felonies.

We affirm.

Upon appeal, Stoker presents three issues, which we restate as follows:

(1) Whether Article One, Section Twelve of the Indiana Constitution requires that all custodial interrogations in places of detention be recorded.

(2) Whether the trial court erred in admitting evidence of Stoker's prior misconduct to rebut his entrapment defense.

(3) Whether the jury was improperly permitted to re-examine transcripts of the defendant's confession and of the controlled buy, both of which were admitted into evidence.

Stoker and Krystal Crouch purchased prescription narcotics in Mexico and brought the drugs across the border into the United States. Upon his return to Indiana, Stoker contacted Donna Covey (Covey) to arrange for her to sell the narcotics. Covey subse-

---

1. I.C. 35–48–4–3 (Burns Code Ed.Repl.1994). The court sentenced Stoker solely upon Count I of the indictment.

quently informed the Henry County Area Drug Task Force of Stoker's plan to distribute the drugs, and agreed to serve as a confidential informant. On January 20, 1996, police arrested Stoker in connection with a drug sale involving Covey.

## I. ELECTRONIC RECORDING OF CUSTODIAL INTERROGATION

Stoker argues that he was deprived of his due process protections under Article One, Section Twelve of the Indiana Constitution [2] because his custodial interrogation was not electronically recorded in its entirety.

### A. Caselaw From Other Jurisdictions

In *Stephan v. State* (1985) Alaska, 711 P.2d 1156, the Alaska Supreme Court held that the failure of police to create an electric recording during a custodial interrogation in a place of detention generally violates the due process rights of a suspect under the Alaska Constitution.[3] After acknowledging that the federal constitution imposed no similar requirement, the court construed its own constitution to afford greater protections than the former. *Id.* at 1160. Specifically, the court found because of its ease and inexpense, specifically in the context of custodial interrogations in detention facilities, record-

ing "is now a reasonable and necessary safeguard, essential to the adequate protection of the accused's right to counsel, his right against self incrimination and, ultimately, his right to a fair trial." *Id.* at 1159–60. The court concluded that, absent a justifiable excuse, the failure to record a custodial interrogation will render any statement received therefrom inadmissible during trial.

Subsequently, in *State v. Scales* (1994) Minn., 518 N.W.2d 587, *reh'g denied,* the Minnesota Supreme Court imposed a similar obligation to record custodial interrogations in places of detention.[4] In establishing this prospective requirement, the court concluded that statements obtained from a suspect in substantial violation of the recording requisite would be suppressed. However, unlike Alaska Supreme Court, the court expressly declined to determine whether the Minnesota Constitution supported the imposition of a recording requirement. Rather, the court utilized its "supervisory power to insure the fair administration of justice ..." to reach its desired result. *Id.* at 592.

However, of the minimum twenty-three additional states which have addressed this issue, none have mandated that custodial interrogations be tape recorded.[5] In fact, *Ste-*

---

**2.** The constitutional provision provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase, completely, and without denial; speedily, and without delay." Art. 1, § 12 (Burns Code Ed.Repl.1997).

**3.** Previously, the court noted "it is incumbent upon [police] to tape record, where feasible, any questioning [of criminal suspects,] and particularly that which occurs in a place of detention." *Mallott v. State* (1980) Alaska, 608 P.2d 737, 743 n. 5.

**4.** Similar to Alaska, the Minnesota Supreme Court previously acknowledged the benefits of electronic recording and warned law enforcement officers to preserve conversations which occurred in the context of interrogations to the extent technically possible. *See State v. Robinson* (1988) Minn., 427 N.W.2d 217, 224; *State v. Pilcher* (1991) Minn., 472 N.W.2d 327, 333.

**5.** Our research uncovered seven different rationales enunciated by these courts in rejecting the *Stephan* standard:

(1) Previous application of a rule consistent with *California v. Trombetta,* (1984) 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, with respect to the state constitution is strong indication that latter does not require recording of custodial interrogations. *State v. Spurgeon* (1991), 63 Wash.App. 503, 820 P.2d 960, *review denied.*
(2) The recording requirement is properly left to the discretion of the legislature, and should not be established via "judicial fiat". *Vermont v. Gorton* (1988), 149 Vt. 602, 548 A.2d 419, 422.
(3) Because federal constitution does not mandate recording, court not willing to expand state constitutional protections beyond that of the former. *State v. Rhoades* (1991), 119 Idaho 594, 809 P.2d 455, 462.
(4) Defendant was not in fact deprived of a fair trial by the failure to record, and therefore no violation of due process occurred. *State v. Kekona* (1994), 77 Hawai'i 403, 886 P.2d 740, 746; *Jimenez v. State* (1989), 105 Nev. 337, 775 P.2d 694, 696–97.
(5) Exact similarity of federal and state constitutional language weighs against expansion of state constitutional rights beyond that granted

*phan* remains the sole example of a state court construing its constitution to command such a requirement. Nonetheless, we decline to follow the route of the lemming, and choose to analyze the argument in light of the unique nature of the Indiana Constitution.

## B. Analysis

■ Initially, we note that our case does not involve the preservation of exculpatory evidence, but creation of evidence which would provide alternative, but perhaps more reliable, proof of a fact, or would confirm and be in addition to other evidence of the same fact.[6] *See State v. Spurgeon, supra,* 820 P.2d at 962. However, in the absence of controlling precedent regarding the latter, we are guided in the present case by previous decisions pertaining to the analogous issue of evidence preservation.[7]

In *California v. Trombetta,* (1984) 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not require police officers to preserve for trial breath samples obtained incident to drunk-driving arrests. According to the Court, a law enforcement agency must preserve evidence if it "might be expected to play a significant role in the suspect's defense." *Id.* at 488, 104 S.Ct. at 2534. Specifically, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct.

at 2534. Here, neither prong was satisfied, as the breath samples were more likely inculpatory and alternative means of challenging the accuracy of the breath analysis were available.

Subsequently, in *Arizona v. Youngblood,* (1988) 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, *reh'g denied,* the Court concluded that the Due Process Clause did not necessarily require police officers to preserve evidence which, if subjected to clinical tests, might exonerate the defendant. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58, 109 S.Ct. at 337. In reaching its decision, the Court implicitly noted that to require officers to preserve every piece of evidence which might possibly exonerate the defendant would be unreasonable. *See id.*

■ Because tape recordings do not satisfy the standard of constitutional materiality enunciated in the above cases, the federal constitution seemingly imposes no duty to record custodial interrogations. *See Stephan, supra,* 711 P.2d at 1160. Nonetheless, we are not compelled to conclude that Article One, Section Twelve of the Indiana Constitution fails to encompass such a requirement. Rather, this court may interpret our state constitution to afford greater protections than those provided by the federal constitution. *Taylor v. State* (1994) Ind.App., 639 N.E.2d 1052, 1053.

Although not binding upon this court, we consider the rationale utilized by the Court

by the federal constitution. *Spurgeon, supra,* 820 P.2d at 962.

(6) Constitutional policy determinations from other jurisdictions are not binding, or even persuasive. *See Callis v. State* (1997) Ind.App., 684 N.E.2d 233, 240–41.

(7) The majority of jurisdictions reject the principle. *State v. James* (1993) Utah App., 858 P.2d 1012, 1017–18.

**6.** Stoker claims that, during the portion of the interrogation not recorded, he requested and was denied assistance of counsel and was threatened by the police officers. However, he fails to contend that a recording of the entire interrogation would exculpate him of the crimes of which he was convicted.

**7.** We acknowledge that another panel of this court stated that the Indiana Constitution does not require that custodial interrogations be recorded. *Callis, supra,* 684 N.E.2d at 240–41. However, we reexamine this issue because: (1) *Callis* involved a non-custodial interrogation; and (2) *Callis* summarily rejected the argument.

In addition, we note that *Callis* also stated that "*Stephan* and *Scales* ... are founded solely on their respective state constitutions." *Id.* at 241. However, as noted *supra,* the decision reached in *Scales* was based not upon the Minnesota Constitution, but involved an exercise of that court's "supervisory power to insure the fair administration of justice...." *Scales, supra,* 518 N.W.2d at 592.

of Appeals of Washington in *Spurgeon, supra,* 820 P.2d at 962, to be constructive. There, the court observed that the Alaska Court of Appeals, prior to the decision of the Alaska Supreme Court in *Stephan, supra,* 711 P.2d at 1156, concluded that its state constitution imposed a duty to preserve breathalyzer samples. *Spurgeon, supra* at 962. Therefore, the rationale advanced in *Stephan* to extend the protections afforded by the Alaska Constitution beyond that of the federal constitution under *Trombetta, supra,* 467 U.S. at 479, 104 S.Ct. at 2528, was not without precedent. On the other hand, because Washington courts previously concluded that the Washington Constitution did not command the preservation of breathalyzer samples, the *Spurgeon* court reasoned that application of a rule consistent with *Trombetta* was "a strong indication that our constitution does not require tape recorded interrogations." *Spurgeon, supra* at 963.

▆ Although no court has considered whether our state constitution imposes a specific duty upon law enforcement officers to preserve breathalyzer samples, this court has applied the general rule enunciated in *Youngblood, supra,* 488 U.S. at 51, 109 S.Ct. at 333–34, with regard to evidence preservation issues under the Indiana Constitution. In *Rita v. State* (1996) Ind.App., 663 N.E.2d 1201, 1204, *aff'd in part, vacated in part* (1996) Ind., 674 N.E.2d 968, this court, after concluding that "the Indiana Due Course of Law requirement is analogous to the Due Process Clause of the Fourteenth Amendment", held that *Youngblood* was applicable to evidence preservation issues under our state constitution.[8] Therefore, similar to the court in *Spurgeon, supra,* 820 P.2d at 962, with respect to the Washington Constitution, this court has previously concluded that the standard for evidence preservation under the Indiana Constitution is consistent with the federal analysis. Accordingly, we hold that Article One, Section Twelve of the Indiana Constitution does not require law enforcement officers to record custodial interrogations in places of detention.

Nevertheless, although we impose no legal obligation, we discern few instances in which law enforcement officers would be justified[9] in failing to record custodial interrogations in places of detention.[10] Disputes regarding the circumstances of an interrogation would be minimized, in that a tape recording preserves undisturbed that which the mind may forget. *See Stephan, supra,* 711 P.2d at 1161. In turn, the judiciary would be relieved of much of the burden of resolving disputes involving differing recollections of events which occurred. *Id.* Moreover, the recording would serve to protect police officers against false allegations that a confession was not obtained voluntarily. *Id.* at 1162. Therefore, in light of the slight inconvenience and expense associated with the recording of custodial interrogations in their entirety, it is strongly recommended, as a matter of sound policy, that law enforcement officers adopt this procedure.[11]

---

**8.** Unlike the majority in *Rita,* we do not interpret *Youngblood* to hold that reversal is proper only upon demonstration of subjective "bad faith" on behalf of law enforcement officers who destroy or fail to preserve evidence. *Id.* at 1209–10 (Sullivan, J., concurring in result). Rather, in some instances, the destruction or failure to preserve evidence may be so prejudicial to the defendant as to warrant reversal, even in the absence of "bad faith" by the officers. *Id.* However, the issue here involves not our personal reading of the case, but whether Indiana courts have applied the *Youngblood* standard to state constitutional issues.

**9.** *See Stephan, supra,* 711 P.2d at 1162 ("[a]cceptable excuses might include an unavoidable power or equipment failure, or a situation where the suspect refused to answer any questions if the conversation is being recorded.").

**10.** In fact, to the best of our knowledge, no court in any jurisdiction has ever concluded that the tape recording of custodial interrogations in places of detention would be detrimental; rather, the justification, as in the present case, for rejecting such a duty is solely that it is not a constitutional requirement.

**11.** In the absence of an electronic recording of a custodial interrogation in a place of detention, we also note that the following consequences may ensue:

"[D]efense counsel is entitled to pursue the failure of the police to record a defendant's statements. Counsel may, for example, inquire of a testifying police officer ... whether he or she was aware of the availability of recorders to use during the questioning of suspects. Counsel may argue to a jury and to a judge as factfinder that the failure of the police

## II. TESTIMONY CONCERNING PRIOR MISCONDUCT

Stoker also contends that the court erred in allowing testimony concerning his prior drug sales. Specifically, he argues that, pursuant to Ind.Evid.Rule 404(b), the testimony of a confidential informant regarding the sale of Mexican narcotics on March 23 and 24, 1995 was improper. Evid.R. 404(b) provides: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of ... intent...."

In *Wickizer v. State* (1993) Ind., 626 N.E.2d 795, the court articulated the pertinent considerations regarding the admissibility of prior conduct evidence pursuant to Evid.R. 404(b). "The intent exception in Evid.R. 404(b) will be available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of particular contrary intent." *Id.* at 799. In such instances, the State is permitted to introduce evidence of relevant prior conduct, provided that the probative value of the evidence substantially outweighs any unfair prejudice, confusion, or undue delay. *Id.*

In the present case, Stoker, who asserted the defense of entrapment, stipulated "that the State may in its case-in-chief introduce evidence of predisposition." Record at 103. Moreover, counsel for Stoker conceded that his trial strategy included an attempt during his opening statement to contest the issue of intent. Thus, Stoker affirmatively presented a claim of contrary intent, thereby triggering the exception to Evid.R. 404(b).

Nonetheless, Stoker argues that even if the evidence is admissible pursuant to the Evid.R. 404(b) exception, it should be excluded under Evid.R. 403 because it is unfairly prejudicial. We disagree. Stoker conceded during trial that the evidence was merely cumulative of that already presented as to predisposition. Moreover, even if prejudicial, the probative value of Stoker's prior transactions involving Mexican narcotics to demonstrate knowledge and intent outweighed any unwarranted prejudicial effect.

## III. FURTHER REVIEW OF TRANSCRIPTS

Finally, Stoker argues that the court improperly permitted the jury, after they commenced deliberations, to review transcripts of Stoker's confession and the actual drug buy. I.C. 34–1–21–6 (Burns Code Ed. Repl.1986) provides:

"After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony ... they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

Upon appeal, Stoker contends that the jury did not disagree about the evidence, but merely did not remember portions thereof. However, this court has previously concluded that the jury must only be uncertain of the contents of the evidence to satisfy the statutory requirement. *State v. Chandler* (1996) Ind.App., 673 N.E.2d 482, 485 (Sullivan, J., concurring). *See also State v. Winters* (1997) Ind.App., 678 N.E.2d 405, 409–10. Because the foreman indicated that some of the jurors had questions about the substance of the transcripts admitted into evidence, we hold that the trial court did not abuse its discretion in providing the jury the opportunity to review these documents.

The judgment is affirmed.

KIRSCH, J., concurs.

FRIEDLANDER, J., concurs as to Parts I and II, and concurs in result as to Part III.

to record electronically statements made in a place of custody should be considered in deciding the voluntariness of any statement, whether the defendant was properly advised of his rights, and whether any statement attributed to the defendant was made." *Commonwealth v. Diaz* (1996), 422 Mass. 269, 661 N.E.2d 1326, 1329.