**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39807**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 402 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 4, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DAVID JOSEPH MEISTER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. Carl B. Kerrick, District Judge.

Judgment of conviction for murder in the first degree and conspiracy to commit murder in the first degree, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis and Sarah E. Tompkins, Deputy Appellate Public Defenders, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

David Joseph Meister appeals from the judgment of conviction entered upon jury verdicts finding him guilty of murder in the first degree, Idaho Code §§ 18-4001, 18-4003, and conspiracy to commit murder in the first degree, I.C. §§ 18-4001, 18-4003, 18-1701. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 11, 2001, a woman was shot and killed in her home in Moscow, Idaho. In August 2002, police officers interrogated Meister in connection with the victim's death and Meister confessed that he shot the victim in exchange for a $1,000 payment from the victim's boyfriend. Meister was charged with first degree murder and conspiracy to commit murder. Prior to trial, Meister filed a motion to suppress his confession claiming that his confession was

coerced, that it was in violation of *Miranda*,[1] and that the entire interview was not videotaped. The district court denied the motion. The jury convicted Meister of all charges and Meister appealed. This Court concluded that the district court did not err in admitting evidence of Meister's confession. *State v. Meister*, Docket No. 30152 (Ct. App. Oct. 1, 2007) (unpublished). However, this Court found that the district court erred by failing to admit evidence of an alternate perpetrator. The State appealed the alternate perpetrator issue to the Idaho Supreme Court. The Supreme Court concluded that the district court erred by applying the wrong standard for admissibility of alternate perpetrator evidence and vacated Meister's conviction and remanded the case for a new trial. *State v. Meister*, 148 Idaho 236, 220 P.3d 1055 (2009).

Prior to the second trial, the State filed a motion asking the district court to apply the law of the case doctrine and preclude Meister from re-litigating any issue addressed by this Court or the Idaho Supreme Court. The district court granted the motion with respect to the issues addressed by the Supreme Court and denied the motion with respect to the issues addressed by this Court. The district court also applied the law of the case doctrine to all rulings of the district court that were not appealed after the first trial, unless a showing could be made that a decision was clearly erroneous and would work a manifest injustice.

Meister again filed a motion to suppress his confession based on coercion. The district court held a hearing in which Dr. Ofshe provided expert testimony regarding the coercive nature of some interrogation techniques. Dr. Ofshe concluded that Meister's interrogation was psychologically coercive. Even considering Dr. Ofshe's testimony, the district court concluded that based on the totality of the circumstances, Meister's confession was not coerced and denied his motion to suppress his confession.

Thereafter, the State filed a motion in limine to preclude Dr. Ofshe from testifying at trial, claiming that the district court's prior ruling that Meister's confession was not coerced made Dr. Ofshe's testimony irrelevant to any issue before the jury. The district court determined that its previous ruling regarding the voluntariness of Meister's confession would stand; therefore, the court ruled that Dr. Ofshe would be precluded from testifying regarding the voluntariness of Meister's confession. The district court also found that Dr. Ofshe would not be

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

allowed to offer an opinion regarding whether Meister's confession was true or false. However, the court ruled that Dr. Ofshe would be allowed to offer testimony regarding the general subject of false confessions, as it could assist the jury in reaching a conclusion as to whether Meister's confession was true or false.

At trial, Dr. Ofshe testified about the general subject of false confessions, including his theories of how interrogation tactics can lead an innocent person to confess to a crime. The State cross-examined Dr. Ofshe regarding the percentage of cases he reviewed that resulted in a false confession. Thereafter, Meister sought permission for Dr. Ofshe to apply his theories to the facts of the case, arguing that the State's cross-examination had opened the door for such application. The district court denied the request.

Meister was convicted of murder in the first degree and conspiracy to commit murder. The district court imposed concurrent determinate life sentences for each conviction. Meister timely appeals.

## II.

## ANALYSIS

Meister claims that the district court abused its discretion by denying his request to have Dr. Ofshe testify about the application of his theories to the facts associated with Meister's confession. The State contends that Meister failed to show error in relation to the limitation of Dr. Ofshe's testimony. In the alternative, the State asserts that any error was harmless.

### A.     Dr. Ofshe's Testimony

A trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *State v. Merwin*, 131 Idaho 642, 645, 962 P.2d 1026, 1029 (1998). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Pursuant to Idaho Rule of Evidence 702, an expert witness may provide an opinion "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." An expert's testimony is not inadmissible merely

3

because it embraces an ultimate issue to be decided in the case. I.R.E. 704. "The function of the expert is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror." *State v. Tankovich*, 155 Idaho 221, 227, 307 P.3d 1247, 1253 (Ct. App. 2013). "Therefore, expert testimony is inadmissible if it merely draws conclusions or opinions that the average juror is qualified to draw from the facts utilizing the juror's common sense and normal experience." *Id.* Additionally, "evidence is generally inadmissible under I.R.E. 702 if it vouches for the credibility of another witness." *Hansen v. Roberts*, 154 Idaho 469, 474, 299 P.3d 781, 786 (2013).

In the instant case, the district court precluded Dr. Ofshe from offering an opinion regarding the truthfulness of Meister's confession in a pretrial order. In the court's written order, the district court stated, "Dr. Ofshe is not permitted to discuss the truthfulness or falseness of David Meister's confession, simply because doing so involves weighing Meister's credibility based on his out-of-court statements. Credibility determinations fall solely to the jury." The district court relied on *State v. Walters*, 120 Idaho 46, 813 P.2d 857 (1990)[2] in making its determination. At trial, following cross-examination, Meister requested that Dr. Ofshe be allowed to testify regarding the application of his theories to the facts of the case because the State opened the door to such testimony. The district court denied the request but did not elaborate on its ruling stating, "the Court's going to deny that request and still stay with the Court's original ruling and deny your request--or your argument that the door has been opened to allow that line of questioning in this case."

On appeal, Meister claims that the district court abused its discretion by limiting the testimony of Dr. Ofshe. First, Meister contends that Dr. Ofshe should have been permitted to testify regarding the voluntariness of his confession. Meister argues that although the district court determined his confession was voluntary, and thus admissible, he was still entitled to challenge its weight and credibility. Meister relies on a case issued by the Indiana Supreme

---

[2]  In *State v. Walters*, 120 Idaho 46, 813 P.2d 857 (1990), a fire investigator testified that the fire was deliberately set and that he believed the defendant started the fire. The Idaho Supreme Court stated that to "allow an expert *on the cause of fires* to weigh the evidence and testify as to *who* he believes is guilty of the crime of arson . . . would be allowing the 'expert' to leave the realm of his expertise and invade the province of the jury." *Id.* at 57, 813 P.2d at 868 (Boyle, J., concurring) (Justice Boyle's concurring opinion issued on rehearing was joined by two other justices and thus presented the view of a majority of the Idaho Supreme Court).

4

Court for support. In *Miller v. State*, 770 N.E.2d 763, 772 (Ind. 2002), the trial court excluded Dr. Ofshe's testimony regarding police interrogation in its entirety. The Supreme Court concluded that the trial court's initial determination that Miller's confession was voluntary did not preclude Miller from challenging its weight and credibility and thus, Dr. Ofshe's testimony should have been admissible. *Id.* at 773-74. The Supreme Court also stated that the trial court could have sustained individual objections at trial in the event that Dr. Ofshe's testimony invaded Rule 704's prohibition of opinion testimony as to the truth or falsity of Miller's statements. *Id.* at 774.[3] Therefore, based on *Miller*, Meister claims that Dr. Ofshe should have been allowed to challenge the weight and credibility of Meister's confession.

Second, Meister contends that the district court erred by precluding Dr. Ofshe from testifying about the specific procedures used in Meister's interrogation. Meister points to *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2013) for support.[4] In that case, an eyewitness identified Almaraz in a photographic lineup. At trial, the defense sought to introduce expert testimony on the suggestiveness of the police officer's interview with the eyewitness and the suggestiveness of the photographic lineup. The district court allowed the expert to testify regarding the suggestiveness of the photographic lineup. The court also allowed the expert to testify regarding generally suggestive procedures that could render eyewitness identification unreliable, but precluded the expert from making any connections between suggestive techniques and the procedures used by the police officer who interviewed the eyewitness. *Id.* at 599, 301 P.3d at 257. The Idaho Supreme Court concluded that the district court abused its discretion when it ruled that the expert could not testify about the specific procedures used in the police officer's interview of the eyewitness. The Court reasoned that the testimony would not have been considered an opinion as to the eyewitness's credibility, but "would have been helpful to the average juror's understanding of whether the interview was conducted in an overly suggestive

---

[3]  In another Indiana case relied on by the *Miller* Court, *Callis v. State*, 684 N.E.2d 233 (Ind. Ct. App. 1997), the Indiana Court of Appeals affirmed the trial court's ruling that Dr. Ofshe's expert testimony regarding the general phenomenon of coerced confessions was admissible, but testimony as to the truth or falsity of the confession was inadmissible. *Id.* at 239-40.

[4]  We note that *State v. Almaraz*, 154 Idaho 584, 301 P.3d 242 (2013) was published after Meister's trial; therefore, the district court was unable to rely on *Almaraz*, if applicable, when ruling on the admissibility of Dr. Ofshe's testimony.

way." *Id.* at 600, 301 P.3d at 258. The Court then stated, "Testimony relating to the proper guidelines for conducting an accurate interview or lineup, whether or not those procedures were followed in the case at hand, and the consequences of non-compliance with those procedures does not invade the province of the jury." *Id.*

Meister claims that *Almaraz* is controlling and that the district court erred by precluding Dr. Ofshe from testifying regarding the application of his theories to the facts of the case. He argues that Dr. Ofshe should have been permitted to discuss the specific questions and tactics employed by police officers during his interrogation.

The State claims that the issue is whether or not the district court abused its discretion when it determined that the State did not open the door to allow Meister to offer Dr. Ofshe's testimony applying his theories to the facts of the case.[5] At trial, Meister argued that the State opened the door to such testimony because the State cross-examined Dr. Ofshe regarding the percentage of cases he reviewed that resulted in a false confession. On appeal, the State claims that its cross-examination of Dr. Ofshe did not open the door but instead only demonstrated that there is no way to know whether a confession is true or false. Therefore, the State asserts that the district court properly exercised its discretion in denying Meister's request.

The State also contends that Meister failed to show that the district court abused its discretion in limiting Dr. Ofshe's testimony. The State argues that the purpose of Dr. Ofshe's testimony was to provide the jury with the framework for evaluating whether Meister's confession was true or false. Meister was then able to provide his own testimony regarding the interrogation and he was also able to cross-examine the interrogating officer. Thus, the State claims that the jury had all the necessary information to make a determination regarding the credibility of Meister's confession, and that allowing Dr. Ofshe to testify further would have only resulted in Dr. Ofshe providing an opinion on the credibility of Meister's confession, which is prohibited by Rule 704. Additionally, the State claims that Meister's reliance on *Miller* is

---

[5]     Prior to trial, Meister argued that Dr. Ofshe should be able to testify that "false confessions do, in fact, exist, and what his training and experience and education has shown to be the milieu in which they arise." Dr. Ofshe was allowed to testify, as requested, pretrial. Meister argued during trial that Dr. Ofshe should be able to testify regarding applying his theories to the facts of the case because the State opened the door.

6

misplaced because Dr. Ofshe was allowed to testify in this case on matters that were erroneously excluded in *Miller*.[6]

The State also claims that *Almaraz* is distinguishable from the instant case because *Almaraz* involved an expert who would testify regarding the *reliability* of eyewitness identification whereas the instant case involves an expert who would testify of the *credibility* of Meister's own statements. Specifically, the State argues that since the district court determined that Meister's statements were made voluntarily, allowing Dr. Ofshe to testify regarding the application of his theory to the facts of the case would amount to Dr. Ofshe passing upon the credibility of Meister's confession, which is impermissible. Thus, the State asserts that *Almaraz* is not controlling in the instant case.

We need not address whether the district court abused its discretion in limiting Dr. Ofshe's testimony as any error would be harmless.

## B.     Harmless Error

Even if the district court erred in limiting Dr. Ofshe's testimony, the error was harmless. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). A defendant, appealing from an objected-to, non-constitutionally-based error, has the duty to establish that such an error occurred, at which point the State has the burden of demonstrating that the error is harmless beyond a reasonable doubt.

First, at trial, Dr. Ofshe testified at great length about different tactics used by interrogators that can lead to a false confession. These tactics include using evidentiary ploys to lead the defendant to believe the situation is hopeless and police officers suggesting a scenario for the crime and attaching leniency to that scenario. Dr. Ofshe also testified that a defendant who falsely confesses will usually volunteer information about the crime that turns out to be objectively wrong. Even if it was error to further limit Dr. Ofshe's testimony, the information

---

[6]      Specifically, the Miller Court stated that Dr. Ofshe should have been allowed to testify regarding the relevant aspects of police interrogation. *Miller v. State*, 770 N.E.2d 763, 774 (Ind. 2002). The State asserts that Dr. Ofshe was not precluded from testifying to the relevant aspects of police interrogation in the instant case.

Meister sought to get before the jury--specifically information regarding the application of Dr. Ofshe's theories to the facts of the case--was presented to the jury during defense counsel's closing statement.

During closing statements, defense counsel discussed how Dr. Ofshe's theories applied to the facts of the case. Defense counsel stated that police officers initially presented Meister with the evidence against him, including evidence regarding the gun, shoes, footprints, and bullet packages. The officers sat knee-to-knee with Meister haranguing him for forty minutes "until we get to the point where it's hopeless." Defense counsel then argued that, after hours of interrogation, police officers presented Meister with the scenario that Meister had been hired by a co-worker to kill the co-worker's girlfriend. Defense counsel discussed with the jury how the officers attached leniency to this scenario by telling Meister that the co-worker was the bad person and that they wanted to help Meister. Defense counsel then stated, "That's the point from Dr. Ofshe. And that's the point you get to by doing all of the things that [the police officers] did in their interrogation of him to result in a false confession. They made it hopeless, and they provided him an out." Defense counsel then discussed the details of Meister's confession that contradicted the evidence. For instance, Meister claimed to see a police vehicle on a road while fleeing when, in fact, no police vehicle was on that road. Meister also confessed to throwing away the bullets as he was fleeing; however, several witnesses testified that Meister offered to give them the bullets in the days that followed. Additionally, Meister claimed that he discarded his clothes in the field, but no clothes were ever found in the field. Defense counsel then stated, "the circumstances offered by Dr. Ofshe that provide for, create the circumstances of a false confession." Thus, to a large extent, the defense was able to articulate for the jury how the facts of this case could be applied to Dr. Ofshe's theories.

Second, the evidence was overwhelming that Meister was guilty of murder. The State admitted into evidence two bullets which were found at the crime scene; one bullet was found in the wall of the victim's home and the other bullet was removed from the victim's body. The State also admitted two cartridge cases. Two firearm experts testified that the bullets were fired from a High Point nine millimeter semiautomatic handgun. The experts also testified that the bullets were remanufactured and were consistent with the bullets remanufactured by Ultramax. The State also presented evidence that Meister had purchased a High Point nine millimeter semiautomatic handgun and Ultramax remanufactured ammunition days prior to the victim's

8

death. Meister admitted in his testimony that he purchased the gun, but he testified that he sold the gun and ammunition to a stranger at a party the day prior to the victim's death. However, after the victim's death, the gun manual and tools were discovered under the refrigerator in Meister's home. Moreover, the person who sold the gun to Meister testified that Meister told him he was "going to shoot somebody in the face," which the witness interpreted as sarcasm. Testimony was also admitted wherein Meister, after the victim's death, offered to give at least two individuals a box of nine millimeter ammunition. One witness testified that Meister told him he wanted to get rid of the ammunition because he was afraid it was used in a crime and the witness and Meister proceeded to throw the ammunition into a dumpster.

The State also admitted into evidence photographs of footprints that were found at the scene of the crime. When police officers arrived at the victim's home, they found footprints in the snow leading from the backdoor of the home, through a field, over some fences, and to a road. A police officer conducted a shoe print analysis and testified that the footprints in the snow were likely created by a size eight and one-half to nine and one-half shoe. Additionally, the tread design on the footprint was consistent with the tread design of an Osiris ODS shoe. Multiple witnesses testified that Meister had owned Osiris ODS shoes. Moreover, a shoe salesman measured Meister's foot and testified that Meister's shoe size was eight and one-half to nine.

Two eyewitnesses testified that they saw a person walking along the highway near the victim's home immediately prior to the victim's death. The witnesses stated that the person was male, wore a plaid flannel shirt, dark baggy pants, possibly had a scarf, and walked with an unusual gait. The witnesses also testified that the person they saw fit the physical size of Meister. When Meister confessed to police officers, he stated that prior to going to the victim's home, he drank a couple of beers to get a buzz, put on dark corduroy pants, a red flannel shirt, a black scarf, and a black beanie.

Witnesses also testified to statements Meister made after the victim's death. Two witnesses testified that Meister commented, on different occasions, that whoever committed the murder must have been pretty smart not to have gotten caught. Another witness testified that he and Meister were discussing the murder when Meister said, "What would you say if I told you I did it?" Meister then said, "Well, I did it," after which he said, "No, no, I'm just kidding." Meister's friend's father testified at trial and stated that he and Meister were watching a detective

9

show and Meister told him that a co-worker gave him $1,000 to kill the co-worker's girlfriend. Meister told the father that he went to the woman's trailer house, knocked on the door, and shot her in the face and the chest. He also told the father that he ran to a field where he had stashed some clothes and shoes, changed his clothes and shoes, and threw the gun and shoes in a garbage can.

Based on the foregoing, we conclude that the district court's decision to preclude Dr. Ofshe's testimony regarding the application of his theories to the specific facts of this case was harmless error, if error at all. Dr. Ofshe testified generally about false confessions and the tactics used by interrogators to coerce a false confession. Meister was able to cross-examine the officer who interrogated him regarding the interrogation tactics as well as provide his own testimony about the interrogation. During closing statements, defense counsel was able to explain to the jury how Dr. Ofshe's theories applied to Meister's interrogation. Additionally, the evidence was overwhelming that Meister was guilty of the charged offenses.

## III.

## CONCLUSION

Meister has failed to demonstrate reversible error. Accordingly, the judgment of conviction entered upon jury verdicts finding Meister guilty of murder in the first degree and conspiracy to commit murder is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**